IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Linda Kidwell, Walter P. Paramski, Jr., and<br>L&W Real Estate Management, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 20-cv-4744 |
| | ) | |
| Village of Antioch, Illinois, Gerald T. Johnson, | ) | Judge Charles R. Norgle |
| in his official capacity as a Member of the Board | ) | |
| of Trustees of the Village of Antioch, Illinois, | ) | |
| Daniel F. Yost, in his official capacity as a | ) | |
| Member of the Board of Trustees of the Village of | ) | |
| Antioch, Illinois, Edward A. Macek, in his official | ) | |
| capacity as a Member of the Board of Trustees of | ) | |
| the Village of Antioch, Illinois, Scott A. Pierce, | ) | |
| in his official capacity as a Member of the Board | ) | |
| of Trustees of the Village of Antioch, Illinois, Ted | ) | |
| P. Poulos, in his official capacity as a Member of | ) | |
| the Board of Trustees of the Village of Antioch, | ) | |
| Illinois, Mary C. Dominiak, in her official capacity | ) | |
| as a Member of the Board of  Trustees of the | ) | |
| Village of Antioch, Illinois, and Lawrence M. | ) | |
| Hanson, in his official capacity as Mayor of the | ) | |
| Village of Antioch, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

NOW COME the Plaintiffs, Linda Kidwell, Walter P. Paramski, Jr., and L&W Real

Estate Management, LLC, by and through their attorney, James T. Harrison of Harrison Law

Offices, P.C., and for their Second Amended Complaint against the Defendants, Village of

Antioch, Illinois, (hereinafter "Defendant Village"), Gerald T. Johnson, in his official capacity as

a Member of the Board of Trustees of the Village of Antioch, Illinois, Daniel F. Yost, in his

official capacity as a Member of the Board of Trustees of the Village of Antioch, Illinois,

Edward A. Macek, in his official capacity as a Member of the Board of Trustees of the Village of

1

Antioch, Illinois, Scott A. Pierce, in his official capacity as a Member of the Board of Trustees of the Village of Antioch, Illinois, Ted P. Poulos, in his official capacity as a Member of the Board of Trustees of the Village of Antioch, Illinois, Mary C. Dominiak, in her official capacity as a Member of the Board of Trustees of the Village of Antioch, Illinois, and Lawrence M. Hanson, in his official capacity as Mayor of the Village of Antioch, Illinois, state and allege as follows:

## PARTIES

1.      At all times relevant hereto, the Plaintiff, Linda Kidwell, (hereinafter "Kidwell"), was an adult resident of Lake County, Illinois.

2.      At all times relevant hereto, the Plaintiff, Walter P. Paramsky, Jr., (hereinafter "Paramsky"), was an adult resident of Lake County, Illinois.

3.      At all times relevant hereto, the Plaintiff, L&W Real Estate Management, LLC, was an Illinois Limited Liability Corporation, organized pursuant to the laws of the State of Illinois, with its principal place of business being at 22126 West North Avenue, in the Village of Antioch, Lake County, Illinois.

4.      At all times relevant hereto, Plaintiffs Linda Kidwell and Walter P. Paramsky, Jr. were the owners of L&W Real Estate Management, LLC.

5.      At all times relevant hereto, Plaintiffs Kidwell and Paramsky owned, and Plaintiff Kidwell operated, Anita Self Storage, Inc., a self-storage business located at 676 Anita Avenue, Antioch, Illinois, 60002.

6.      At all times relevant hereto, the Defendant, Village of Antioch, Illinois, (hereinafter "Defendant Village") was a municipal corporation, organized pursuant to the laws of the State of Illinois, with its principal place of business being at 874 Main Street, Antioch, Illinois.

2

7.    At all times relevant hereto, the Defendant, Gerald T. Johnson, (hereinafter "Defendant Johnson") was an adult resident of the Village of Antioch, County of Lake, State of Illinois.  At all time relevant hereto, Defendant Johnson was a duly elected Member of the Board of Trustees of the Village of Antioch, Illinois.   Defendant Johnson is sued in his official capacity.

8.    At all times relevant hereto, the Defendant, Daniel F. Yost, (hereinafter "Defendant Yost") was an adult resident of the Village of Antioch, County of Lake, State of Illinois. At all time relevant hereto, Defendant Yost was a duly elected Member of the Board of Trustees of the Village of Antioch, Illinois.   Defendant Yost is sued in his official capacity.

9.    At all times relevant hereto, the Defendant, Edward A. Macek, (hereinafter "Defendant Macek"), was an adult resident of the Village of Antioch, County of Lake, State of Illinois.  At all time relevant hereto, Defendant Macek was a duly elected Member of the Board of Trustees of the Village of Antioch, Illinois.   Defendant Macek is sued in his in his official capacity.

10.    At all times relevant hereto, the Defendant, Scott A. Pierce, (hereinafter "Defendant Pierce"), was an adult resident of the Village of Antioch, County of Lake, State of Illinois. At all time relevant hereto, Defendant Pierce was a duly elected Member of the Board of Trustees of the Village of Antioch, Illinois.   Defendant Pierce is sued in his in his official capacity.

11.    At all times relevant hereto, the Defendant, Ted P. Poulos, (hereinafter "Defendant Poulos"), was an adult resident of the Village of Antioch, County of Lake, State of Illinois.  At all time relevant hereto, Defendant Poulos was a duly elected Member of the Board of Trustees of the Village of Antioch, Illinois.   Defendant Poulos is sued in his official capacity.

12.     At all times relevant hereto, the Defendant, Mary C. Dominiak, (hereinafter "Defendant Dominiak"), was an adult resident of the Village of Antioch, County of Lake, State of Illinois.  At all time relevant hereto, Defendant Dominiak was a duly elected Member of the Board of Trustees of the Village of Antioch, Illinois.   Defendant Dominiak is sued in her official capacity.

13.     At all times relevant hereto, Defendants Gerald T. Johnson, Daniel F. Yost, Edward A. Macek, Scott A. Pierce, Ted P. Poulos, and Mary C. Dominiak, were the duly elected Board of Trustees of the Village of Antioch, Illinois, and collectively comprised the "Village Board."

14.     At all times relevant hereto, the Village Board possessed final policy-making authority for the Village of Antioch, Illinois, in that the Village Board possessed authority to adopt ordinances, legislation, policies, and rules for the conduct of the Village of Antioch government.

15.     At all times relevant hereto, the Village Board acted under color of law.

16.     At all times relevant hereto, the acts and/or omissions of the Village Board were directly attributable to the Village of Antioch, Illinois.

17.     At all times relevant hereto, the Defendant, Lawrence M. Hanson, (hereinafter "Mayor"), was an adult resident of the Village of Antioch, County of Lake, State of Illinois.  At all time relevant hereto, Defendant Hanson was the duly elected Mayor of the Village of Antioch, Illinois.   Defendant Hanson is sued in his official capacity.

18.     At all times relevant hereto, the Defendant Mayor possessed final policy-making authority for the Village of Antioch, Illinois, in that the Mayor possessed authority to set policy for the conduct of the Village of Antioch government.

4

19.     At all times relevant hereto, the Mayor acted under color of law.

20.     At all times relevant hereto, the acts and/or omissions of the Mayor were directly attributable to the Village of Antioch, Illinois.

**JURISDICTION**

21.     This Complaint contains two (2) counts:  Counts I and II are brought pursuant to 42 U.S.C. Section 1983.  The Court has original jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and pursuant to 28 U.S.C. § 1343(3), civil rights.

**FACTS**

22.     At all time relevant hereto, the Defendant Village adopted and utilized the Village of Antioch, Illinois, Village Code, (hereinafter "Village Code"), which codified the Defendant Village's ordinances, including the Defendant Village's Site Plan Review Ordinance and Zoning Ordinance.

**Parcel A**

23.     At all times relevant hereto, the Plaintiffs owned a vacant parcel of real estate located in Droms Industrial Subdivision on Drom Court in the Village of Antioch, Illinois, bearing permanent property index number 0208201084, and consisting of 3.86 acres, more or less, hereinafter referred to as "Parcel A".

24.     At all times relevant hereto, Parcel A was zoned "M-1 – Limited Manufacturing District" under the Village of Antioch's Zoning Ordinance.

25.     At all times relevant hereto, the M-1 zoning classification permitted outdoor storage yards, including truck, tractor, trailer and bus storage, subject to site plan approval by the Village code enforcement official.

26.     At all times since its acquisition, Plaintiffs had utilized Parcel A, in its undeveloped state, for outdoor trailer storage in connection with Plaintiffs' business, Anita Self Storage.

27.     At all times relevant hereto, the Plaintiffs intended to develop and further utilize Parcel A for additional outdoor trailer storage in connection with Plaintiffs' business, Anita Self Storage, as permitted under the M-1 zoning classification in the Village Code.  Plaintiffs plan was to build a paved, fenced, and lighted parking area on Parcel A.

**Drom Court is a Designated Truck Route**

28.     At all times relevant hereto, Drom Court was a two-lane, asphalt-surfaced, dead-end, Village roadway dedicated for public use including use by the owners/occupants of properties fronting on Drom Court, as well as their invitees.  There are no curbs, gutters, or sidewalks along Drom Court.  The paved portion of Drom Court runs south from North Avenue and terminates at Parcel A.  The right of way for Drom Court separates Parcel A from Plaintiffs' other parcels.

29.     At all times relevant hereto, §7-3-16(A) of the Antioch Village Code provided:

"Certain roads within the village are, by their location, design and construction, amendable to vehicular traffic including heavy and/or large trucks, whereas other local roads are not capable of accommodating these vehicles safely, and the road could be unduly damaged by such traffic.  For these reasons, the village adopts and designates certain truck routes as the appropriate roads for truck traffic."

30.     At all times relevant hereto, pursuant to §7-3-16(B) of the Antioch Village Code, Drom Court was a designated truck route in the Village of Antioch, Illinois.

31.     At all times relevant hereto, the properties along Drom Court consisted of multiple uses, including manufacturing/industrial, commercial, multi-family residential, and single family residential uses.

**Parcel B**

32.     At all times relevant hereto, the Plaintiffs owned a parcel of real estate located on the east side of Drom Court in the Village of Antioch, Illinois, bearing permanent property index number 0208201041, hereinafter referred to as "Parcel B".

33.     At all times relevant hereto, Parcel B was zoned "R-4" under the Village of Antioch "Residential" zoning classification.

34.     At all times relevant hereto, Parcel B was improved with a single structure containing single family residence, a residential studio apartment, and an office.

35.     At all times relevant hereto, Plaintiffs leased Parcel B's residential units to third party tenants and the remainder of Parcel B was utilized by Plaintiffs' business, Anita Self Storage, Inc.

**Parcel C**

36.     At all times relevant hereto, the Plaintiffs owned a parcel of real estate located on the west side of Anita Street, east of Drom Court, in the Village of Antioch, Illinois, bearing permanent property index number 0208201042, hereinafter referred to as "Parcel C".

37.     At all times relevant hereto, Parcel C was zoned "M-1" under the Village of Antioch "Limited Manufacturing District" zoning classification.

38.     At all times relevant hereto, Parcel C was improved with commercial utility/storage buildings.

39.     At all times relevant hereto, Plaintiffs leased one of the commercial buildings on Parcel C to commercial tenants; the remainder of Parcel C was occupied and utilized by Plaintiffs' business, Anita Self Storage, Inc.

**Parcel D**

40.     At all times relevant hereto, the Plaintiffs owned a parcel of real estate located on the west side of Anita Street in the Village of Antioch, Illinois, bearing permanent property index number 0208201058, hereinafter referred to as "Parcel D".

41.     At all times relevant hereto, Parcel D was zoned "M-1" under the Village of Antioch "Limited Manufacturing District" zoning classification.

42.     At all times relevant hereto, Parcel D was improved with commercial storage buildings containing numerous individual storage units of varying size.

43.     Parcels B, C, and D were contiguous parcels, and at all times relevant hereto, Plaintiffs utilized Parcels B, C, and D to operate Anita Self Storage, an outdoor storage yard business owned and operated by Plaintiffs.

44.     At all times relevant hereto, an outdoor storage yard was an authorized use under the Village's M-1 zoning classification.

45.     Due to the increasing demand for trailer storage services, in 2017, Plaintiffs retained an engineering firm to render site plans for the development of Parcel A whereby Plaintiffs could improve and expand their trailer storage capacity.

46.     In the spring of 2018, Plaintiffs began clearing Parcel A to accommodate their expansion plan consistent with the site plan created by their engineer.

47.     Thereafter, the Village contacted the Plaintiffs and told them to refrain from working on Parcel A until their site plan was approved by the Village.

48.     On or about October of 2018 Plaintiff Kidwell met with Michael Garrigan, the Code Enforcement Official for the Defendant Village, regarding Plaintiffs' plan to expand trailer storage capacity on Parcel A.

8

49.     Garrigan initially told Plaintiff Kidwell that improving Parcel A with a paved parking area for trailer storage would be no problem since Parcel A was already zoned M-1 which included the use Plaintiffs were contemplating.

50.     Garrigan also informed Plaintiff Kidwell of the site plan and screening requirements under the Antioch Village Code.  Plaintiff Kidwell raised safety concerns for her customers regarding the screening requirements on the street side of Parcel A.

51.     On or about December 13, 2018, Plaintiff attended a meeting of the Village Zoning Board, (hereinafter "Zoning Board") concerning the safety concerns Plaintiff Kidwell had raised about screening the street side of Parcel A.  During the December 13, 2018 meeting, four neighbors on Drom Court complained about traffic on Drom Court attributable to "Triple Play Academy," Parcel A's adjacent neighbor to the north.

52.     Thereafter, Plaintiff Kidwell engaged in a number of conversations with Michael Garrigan in December 2018 and January 2019, concerning Plaintiffs' site plan and the neighbors' traffic complaints about Triple Play Academy.  Plaintiff reminded Garrigan that the Village was responsible for the traffic issues caused by Triple Play Academy because the Village did not follow its own ordinance on the required number of parking spaces when it issued the permit to Triple Play Academy in November of 2018.

53.     On January 10, 2019, Plaintiffs appeared before the Zoning Board.  Plaintiffs agreed to install lighting as required by the Village Code but raised safety concerns about the screening requirements on the street side of Parcel A.

54.     Plaintiffs offered to screen the entire proposed parking area in order to get the site plan passed, but the Zoning Board suggested instead that Plaintiffs apply for a variance.

Pursuant to the Village Code, variances had to be approved by the Village Board. The Zoning Board continued the matter to the February 21, 2019 meeting.

55.    On or about January 24, 2019, Garrigan told Plaintiff Kidwell that complaints from the neighbors on Drom Court about traffic from Triple Play Academy were not helping Plaintiffs get their site plan approved.

56.    On or about January 25, 2019, Plaintiff Kidwell wrote a letter to Michael Garrigan about the traffic and parking complaints raised by Drom Court neighbors, clarifying that the traffic and parking complaints were attributable to Triple Play Academy, not to Plaintiffs' business.

57.    On or about January 28, 2019, Plaintiff Kidwell wrote a subsequent email notifying Garrigan that she has operated Anita Self Storage for 15 years with no complaints from the neighbors on Drom Court or the neighbors on Anita Street.

58.    Prior to the February 21, 2019 meeting of the Zoning Board, Garrigan asked Plaintiff Kidwell to supply Bob McCarthy, a Zoning Board member, with a copy of a survey of Plaintiffs' other parcels [Parcels B, C, and D]. Plaintiff Kidwell told Garrigan that Plaintiffs' other properties had nothing to do with Plaintiffs' request for a variance to the Village Code's privacy screening requirements for Parcel A.

59.    Prior to the February 21, 2019 meeting of the Zoning Board, pursuant to the Village Code, Plaintiff Kidwell sent out letters to all neighbors entitled to notice concerning Plaintiffs' request for a variance to the Village Code's screening requirements for Parcel A.

60.    Four people from three different households on Drom Court addressed the Zoning Board at the February 21, 2019 meeting. None of the people who addressed the Zoning Board objected to Plaintiffs' request for a variance.

61.     The four residents who spoke at the February 21, 2019 meeting complained about parking along Drom Court due to traffic from Triple Play Academy, they expressed concern about the width of the Drom Court, and opined negatively about future recreational vehicle traffic if Plaintiffs' permit was approved.

62.     One neighbor noted that Plaintiffs already had an entrance to their business on Anita Street and suggested that Plaintiffs and their customers should use the Anita Street entrance to access Parcel A, not Drom Court.

63.     The Zoning Board seized on the idea and decided that Plaintiffs should install a road through their property from Drom Court to Anita Street, so that vehicles could go to and from Parcel A using Anita Street, rather than using Drom Court.

64.     Plaintiff Kidwell told the Zoning Board that the idea to construct a road from Drom Court to Anita Street was not practical.

65.     The Zoning Board denied Plaintiffs' permit application and request for a variance at their February 21, 2019 meeting.

66.     The public right of way for Drom Court completely separates Parcel A from Plaintiffs' other parcels.  Parcel A is west of Drom Court and Parcels B, C, and D are east of Drom Court.  Parcels A, B, and C front on Drom Court; Parcels C & D front on Anita Street.

67.     On February 23, 2019, Garrigan told Plaintiff Kidwell in an email that "The access question is the biggest issue."  Plaintiff Kidwell responded "My access will be on Drom Court.  I'm zoned.  I get access."

68.     Plaintiff Kidwell notified Garrigan that Plaintiffs wished to appeal the decision of the Zoning Board to the Village Board and requested that Garrigan put the matter on the March 11, 2019 agenda for the Village Board meeting.

69.     On March 11, 2019, the Village Board met.  The Village Board did not allow Plaintiff Kidwell to discuss Plaintiffs' site plan.  The Village Board's discussion focused on Plaintiffs installing a road from Anita Street to Drom Court.

70.     The Village Board denied Plaintiffs' appeal and request for a variance at their March 11, 2019 meeting.  The Village Board told Plaintiff Kidwell to come back when Plaintiffs had drawings of an access road from Anita Street to Drom Court.

71.     Plaintiff Kidwell asked why Plaintiffs' petition was denied and was told by the Village Attorney:  "Fire safety; there's only access back to the area, a possible second access road, the utilization of Drom Court, and unhappy neighbors, as well as the screening ordinance."

72.     On or about April of 2019, Plaintiff Kidwell asked Rich Cashmore, a mutual acquaintance of hers and the Defendant Hanson's, to approach the Mayor to see what needed to be done to get their site plan for Parcel A approved.  Cashmore subsequently spoke with Defendant Hanson and asked him what Plaintiff Kidwell needed to do to get site plan approval for Parcel A.  Defendant Hanson replied "she needs to put in a road."

73.     On or about April 2019, Plaintiffs retained counsel to petition the Village Board to reconsider Plaintiffs' appeal of the permit denial and of the request for a variance to the screening requirements, in connection with Plaintiffs' application to develop Parcel A.

74.     On or about April, 2019, Plaintiff Kidwell and Plaintiffs' counsel met with Garrigan to review Plaintiffs' revised site plan, which included lighting, landscaping, fencing, and screening plans together with revised engineered drawings, and to discuss the Village Board's reconsideration of Plaintiffs' appeal and request for a variance.

75.     During the April 2019 meeting, Garrigan told Plaintiff Kidwell that Plaintiffs' revised site plan satisfied the requirements of the Village Code for site plan approval, and

Garrigan agreed to forward Plaintiffs' site plan to the Village Board for the non-voting meeting of the committee of the whole on May 22, 2019.

76.     In May of 2019, the Mayor directed Garrigan and the Fire Chief, Jon Cokefield, to investigate whether emergency vehicles could access Parcel A via Drom Court.  Plaintiff Kidwell met with Garrigan and the Fire Chief at Parcel A.  The Fire Chief concluded that there was no problem for emergency vehicles to access Parcel A via Drom Court for emergency purposes.

77.     After the Fire Chief left and Garrigan and Plaintiff Kidwell were alone, Garrigan insisted that Plaintiffs would have to construct a road from Drom Court to Anita Street or there would be no development of Parcel A.

78.     Garrigan told Plaintiff Kidwell that the Village Board would fight Plaintiffs' use of Drom Court to access Parcel A, that the fight will cost Plaintiffs $100,000, and that it would cost the Village Board nothing.

79.     Plaintiff Kidwell told Garrigan that Plaintiffs were not going to construct a road from Drom Court to Anita Street to accommodate traffic to and from Parcel A, when Parcel A already abuts Drom Court, a public road and designated truck route.

80.     Garrigan responded that "it would be easier if you just agreed to the Village's demands."

81.     Garrigan told Plaintiff Kidwell that the Village would also want an easement for public use of the road, to which Plaintiff Kidwell responded "there's no way that is ever going to happen."

82.     At all times relevant hereto, Garrigan was aware that governmental taking of private property for public use without compensation was prohibited by the Illinois Eminent Domain Act, and by the Fifth and Fourteenth Amendments to the U.S. Constitution.

83.     Thereafter, the Defendant Village requested a meeting with Plaintiffs and their counsel.  Plaintiff Kidwell and her attorney met with Village attorney, Bob Long, Garrigan and Village Administrator, Jim Keim, concerning Plaintiffs' application to use Parcel A.

84.     The meeting was entirely about the Village wanting Plaintiffs to construct a road through Plaintiffs' other parcels, in order to access Parcel A from Anita Street.   Village Administrator Keim told Plaintiff Kidwell and her attorney that Long, Garrigan, and Keim were "helping her" get her application for a permit passed, and that the only way it would pass would be if Plaintiffs put in a road from Anita Street to Drom Court.

85.     Plaintiffs' appeal and variance were considered by the Board on May 22, 2019 during the Village Board's non-voting meeting of the "committee of the whole."

86.     At the May 22, 2019 meeting of the committee of the whole of the Village Board, Garrigan confirmed for the Village Board the propriety of the Village Board's reconsideration of Plaintiffs' appeal and request for a variance without Plaintiffs having to return to the Zoning Board.

87.     Plaintiffs counsel tendered a trip generation study (traffic study) to the Village Board showing that the planned use of the property would have a minimal impact on traffic on Drom Court and would be the least intensive permitted use under the M-1 zoning classification.

88.     During the May 22, 2019 Village Board meeting, Garrigan presented the Plaintiffs' revised site plan and noted that Plaintiffs' revised site plan satisfied the Village Code's

requirements for site plan review. Plaintiffs' revised site plan did not contain a road from Drom Court, through Plaintiffs' other parcels, to Anita Street.

89.    After Garrigan's presentation at the May 22, 2019 Village Board meeting, the discussion that followed among the Village Board members continued to dwell on the notion that Plaintiffs would need to install a road from Drom Court to Anita Street (through Plaintiffs' other parcels) before the Village Board would approve Plaintiffs' site plan for Parcel A.

90.    Plaintiffs' motion for reconsideration of their appeal and request for a variance was placed on the agenda of the Village Board's August 12, 2019 meeting, for final action by the Village Board on Plaintiffs' motion and request for a variance.

91.    At the time of the Village Board's August 12, 2019 meeting, the intended use of Parcel A was a permitted use under the existing zoning classification, there were no objections to the screening variance that Plaintiffs had requested, there were no enforcement actions pending against the Plaintiffs or their properties, Parcel A fronted on Drom Court – a dedicated truck route, and Plaintiffs' site plan had satisfied the Village Code's requirements for permitting.

92.    At the time of the August 12, 2019 Village Board meeting, Plaintiffs had satisfied all legitimate requirements to receive site plan approval and the requested variance.

93.    As a result of his review of the revised site plan, Garrigan concluded that the proposed new parking lot, fencing and lighting on the above-referenced property was in general conformance with the Village's Site Plan Review Ordinance as it relates to building materials, design, and landscape buffering.

94.    As a result of his review of the revised site plan, Garrigan concluded that the granting of a variance from the strict application of the fencing requirements on the west and south sides of the expanded parking lot was an appropriate variance from the Village's Site Plan

regulations in that the west side of the property abuts the Canadian National railway tracks and the south side of the property abuts heavily wooded wetlands.

95.     As a result of his review of the revised site plan, Garrigan concluded that site plan approval for Plaintiffs' new parking lot and variance would further enhance economic development within the Village and promote the general welfare of the Village and the health, safety and welfare of the residents of the Village.

96.     In preparation for its August 12, 2019 Village Board meeting, Village staff prepared an ordinance granting site plan approval for Anita Self Storage, Plaintiffs' business. The proposed ordinance reflected Garrigan's conclusions from his review of the revised site plan that:

    a.   The proposed new parking lot, fencing and lighting on the above-referenced property is in general conformance with the Village's Site Plan Review Ordinance as it relates to building materials, design, and landscape buffering.
    b.   The granting of a variance from the strict application of the fencing requirements on the west and south sides of the expanded parking lot is an appropriate variance from the Village's Site Plan regulations in that the west side of the property abuts the Canadian National railway tracks and the south side of the property abuts heavily wooded wetlands.
    c.   The Site Plan approval for this new parking lot and variance will further enhance economic development within the Village and promote the general welfare of the Village and the health, safety and welfare of the residents of the Village.

97.     During the August 12, 2019 meeting of the Village Board, Plaintiffs' counsel addressed each of the issues that had been raised by the Village Board in its March 11, 2019 meeting and in the May 22, 2019 meeting of the whole, including pre-existing traffic conditions on Drom Court unrelated to Plaintiffs' business, Plaintiffs' traffic study showing minimal traffic impact from the proposed development of Parcel A, confirmation of adequate emergency access by the Fire Chief, and photographic evidence showing cars, buses, trucks, and recreational vehicles concurrently using Drom Court without problems.

98.     The Village Board proceeded to review Plaintiffs' request for reconsideration and each of the Trustees present, as well as the Village Mayor, discussed and/or commented about one or more of the points raised by Plaintiffs' counsel on reconsideration of Plaintiffs' appeal.

99.     The draft ordinance also stated, in relevant part:

"Staff and the Village Attorney met with an agent of the Petitioner and Attorney Gamrath … and discussed the petition in an effort to resolve issues raised during the prior public hearings, but ultimately were unable to reach agreement on certain material terms which render it impossible for Staff to issue a subsequent report recommending approval or denial of the motion for reconsideration at this time."

100.    The "certain material terms" that the parties could not agree upon, referred to in the draft ordinance, were a) that Plaintiffs construct a roadway from Drom Court, through their other parcels, to Anita Street, b) that the roadway would be constructed at Plaintiffs' expense, and c) that Plaintiffs would grant the Village an easement for public use of the roadway, d) without compensation to the Plaintiffs.

101.    During the Village Board's reconsideration of Plaintiffs' appeal and request for a variance at its August 12, 2019 meeting, Village Board member Defendant Yost commented that the Village was attempting to solve a traffic problem with its proposed solution.

102.    The traffic problem the Village was trying to solve with its road construction requirement was not attributable to Plaintiffs' business or to Parcel A.

103.    Village Board member Defendant Dominiak called the question for final action by the Village Board on Plaintiffs' site plan however, no member of the Village Board made a motion to approve or to deny Plaintiffs' site plan.

104.    The Village Board did not take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance at its August 12, 2019 Village Board meeting.

105. The Mayor did not direct the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance at its August 12, 2019 Village Board meeting.

106. The Village Board's failure to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance violated the express language of Section 10-2-4 of the Village Code.

107. At no time relevant hereto, did the Defendant Village initiate eminent domain proceedings to legally acquire Plaintiffs' property for a public roadway from Drom Court to Anita Street.

**Count I**
**42 U.S.C. § 1983**
**14th Amendment – Procedural Due Process Violation**
**Against the Defendant Village of Antioch, Illinois**

1-107. Plaintiffs adopt by reference thereto as though fully incorporated herein, paragraphs 1-107 of Plaintiffs' Second Amended Complaint as paragraphs 1-107 of Count I herein.

108. Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

109. 42 U.S.C. Section 1983 provides that:

> 'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'

110.     At all times relevant hereto, Section 10-2-4 of the Antioch Village Code identified the duties of the Village Board under the Village zoning ordinance.  In relevant part, Section 10-2-4 provided:

> "(1)    Jurisdiction.  The  Village  Board  shall  maintain  the  following responsibilities and duties under this zoning ordinance:  … (b) To review and take final action on appeals and variances."

111.     At all times relevant hereto, Section 10-2-4 of the Village Code created a mandatory duty for the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance.

112.     At all times relevant hereto, the Village Board had knowledge of its duty to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance.

113.     At all times relevant hereto, Section 10-2-4 of the Village Code created a right in Plaintiffs to final action by the Village Board on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance.

114.     At all times relevant hereto, the right to final action by the Village Board, protected Plaintiffs' substantive property rights concerning the use of Parcel A.

115.     At all times relevant hereto, Plaintiffs' right to use Parcel A was a substantive property interest protected by the Fourteenth Amendment to the United States Constitution.

116.     At all times relevant hereto, Section 10-2-4 of the zoning ordinance placed substantive limitations on the discretion of the Village Board in that the ordinance mandated that the Village Board take final action on Plaintiffs' Plaintiffs' motion for reconsideration of appeal and request for a variance.

117.    Section 10-2-4 of the zoning ordinance prohibited the Village Board from withholding final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance.

118.    Notwithstanding their duty to take final action on Plaintiffs' appeal and request for a variance, the Village Board breached its duty under the ordinance and refrained from taking final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance at its August 12, 2019 meeting.

119     The failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance contradicted the express language of Section 10-2-4 of the Village Code.

120.    The Village Board's 'failure to act' is not "final action" within the meaning of the ordinance.

121.    The Village Board's 'failure to act' is not a "final administrative decision" upon which Plaintiffs could seek state court remedies, including administrative review.

122.    The failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance deprived Plaintiffs of a final administrative decision upon which Plaintiffs could seek state court remedies, including administrative review

123.    The failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance deprived Plaintiffs of their substantive property interests in their commercial use of Parcel A.

124.    The failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance deprived Plaintiffs of their rights under the 14th Amendment to the U.S. Constitution.

125.    The failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance was intentional and corrupt.

126.    The Village Board withheld taking final action on Plaintiffs' site plan, in order to: a) force plaintiffs to construct a public roadway from Drom Court, through Plaintiffs' property, to Anita Street, at plaintiffs' expense, b) force Plaintiffs to grant the Village a public easement to use the road, and c) force Plaintiffs to submit to the Village's taking of their property without compensation.

127.    The Mayor did not direct the Village Board to take final action, in order to: a) force plaintiffs to construct a public roadway from Drom Court through Plaintiffs' property to Anita Street, at plaintiffs' expense, b) force Plaintiffs to give the Village a public easement to use the road, and c) force Plaintiffs to submit to the Village's taking of their property without compensation.

128.    The Village Board's failure to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance had the effect of a denial, without the benefit of final action by the Village Board from which Plaintiffs could seek state court remedies.

129.    As a direct and proximate result of the failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance, Plaintiffs suffered immediate and ongoing economic harm in the loss of their commercial use of Parcel A, the loss of associated revenues, and the loss of value in Parcel A.

130.     The Village Board's inaction at its August 12, 2019 meeting left Plaintiffs with no permit to develop Parcel A, and no final action by the Village Board to appeal.

131.     The Village Board's inaction deprived Plaintiffs of the procedural protections of Plaintiffs' substantive property interest in the commercial use of Parcel A.

132.     The Village Board's inaction violated Plaintiffs' constitutional rights to due process guaranteed by the Fourteenth Amendment.

133.     As a direct and proximate result of the conduct of the Village Board in failing to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance, the Defendant Village deprived Plaintiffs of their rights secured by the Fourteenth Amendment to the United States Constitution.

134.     As a direct and proximate result of the conduct of the Village Board in failing to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance, the Defendant Village has caused Plaintiffs to suffer damages of a continuing and pecuniary nature, including loss of use of Parcel A, the loss of value to Parcel A, the loss of revenue from Parcel A, continuing money damages, attorney fees, other professional fees, and other pecuniary losses.

135.     Plaintiffs' damages are the direct and proximate result of the official acts/omissions of the Village Board and Mayor.

136.     State court remedies are unavailable to Plaintiffs because the Village Board failed to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance and because Plaintiffs have suffered economic damages resulting from the Village Board's inaction for which state court remedies are inadequate and fail to provide Plaintiffs with complete relief.

137.    As a direct and proximate result of the conduct of the Village Board, the Defendant Village is liable to the Plaintiffs for civil damages and other relief for the violation of Plaintiffs' civil rights.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Honorable Court grant judgment on their behalf and against the Defendant Village of Antioch, Illinois on Count I of Plaintiffs' Second Amended Complaint, and grant Plaintiffs the following relief:

- Compensatory damages and in an amount in excess of $100,000;

- Plaintiffs' reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

- Remand Plaintiffs' appeal to the Village Board with instructions for the Village Board to take final action on Plaintiffs' appeal and request for a variance and to grant Plaintiffs the requested permit;

- For such other and further relief as the Court deems just and proper.

**Count II**
**42 U.S.C. § 1983**
**14th Amendment Substantive Due Process Violation**
**Against the Defendant Village of Antioch, Illinois**

138-245.    Plaintiffs adopt by reference thereto as though fully incorporated herein, paragraphs 1-107 of Plaintiffs' Second Amended Complaint as paragraphs 138 through 245 of Count II herein.

246.    Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

247.    42 U.S.C. Section 1983 provides that:

'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of

23

the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'

248.    At all times relevant hereto, Plaintiffs had a legitimate claim of entitlement to a building permit and site plan approval under the Village Code and site plan review ordinance.

249.    The Village Code and site plan review ordinance provided substantive criteria, which, if met, would dictate the issuance of a permit.

250.    Plaintiffs met the substantive criteria of the Village's site plan review ordinance and were thereby entitled to the permit under the Village Code.

251.    At all times relevant hereto, the zoning classification for Parcel A created a substantive property interest in Plaintiff regarding the commercial use of Parcel A.

252.    Plaintiffs' substantive property interest in the commercial use of Parcel A was a right protected by the Fourteenth Amendment to the U.S. Constitution.

253.    Plaintiffs also had a substantive property interest in their exclusive use and enjoyment of Parcels B, C, and D.

254.    Plaintiffs' substantive property interest in their exclusive use and enjoyment of Parcels B, C, and D was a right protected by the Fifth and Fourteenth Amendment to the U.S. Constitution.

255.    At all times relevant hereto, the governmental taking of private property for public use without compensation was prohibited by the Fifth and Fourteenth Amendments to the United States Constitution.

256.    At all times relevant hereto, each of the Defendants knew that it was unlawful to use the Village Board's permit review authority to take private property for public use without compensation.

257.    At all times relevant hereto, the Village Code's "M-1" zoning classification provided Plaintiffs with a reasonable expectation of being able to use Parcel A for the purposes authorized under the M-1 zoning classification.

258.    At all times relevant hereto, the Village Code's zoning classifications created substantive property rights for Plaintiffs in the permitted uses of their property (Parcel A) under the existing zoning classification.

259.    At its August 12, 2019 meeting, the Village Board failed to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance.

260.    The Village Board's failure to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance deprived Plaintiffs of their substantive property interest in the use and development of Parcel A.

261.    The Village's failure to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance had the effect of a denial, without the benefit of final action by the Village Board from which Plaintiffs could appeal.

262.    The failure of the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance was intentional and corrupt.

263.    The Village Board withheld taking final action on Plaintiffs' site plan, in order to: a) force plaintiffs to construct a public roadway from Drom Court, through Plaintiffs' property, to Anita Street, at plaintiffs' expense, b) force Plaintiffs to grant the Village a public easement to use the road, and c) force Plaintiffs to submit to the Village's taking of their property without compensation.

264.    The Mayor did not direct the Village Board to take final action, in order to: a) force plaintiffs to construct a public roadway from Drom Court through Plaintiffs' property to

Anita Street, at plaintiffs' expense, b) force Plaintiffs to give the Village a public easement to use the road, and c) force Plaintiffs to submit to the Village's taking of their property without compensation.

265.    The Defendants' plan to force Plaintiffs into constructing a road across Plaintiffs' private property, at Plaintiffs' expense, so that the Village could then take Plaintiffs' private property for public roadway purposes without compensation constitutes inverse condemnation.

266.    The Defendants' use of the Village's permit process to force Plaintiffs to submit to inverse condemnation without compensation was arbitrary, irrational, and egregious.

267.    Plaintiffs were wrongfully deprived of the right to use and develop their property (Parcel A) which was already properly zoned.

268.    The Village's conduct in withholding final action on Plaintiffs' motion for reconsideration of Plaintiffs' permit and request for a variance was arbitrary and irrational and resulted in economic damages to the Plaintiffs.

269.    The governmental taking of private property for public use without compensation is prohibited by the Illinois Eminent Domain Act and by the Fifth and Fourteenth Amendments to the U.S. Constitution.

270.    The Village Board's requirements for Plaintiffs to construct a road from Drom Court to Anita Street at Plaintiffs' expense, to provide a public easement for use of the road, and to submit to the Village's taking of their property for public use without compensation were corrupt and irrational and violated Plaintiffs' rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

271.    The Village Board's requirements for Plaintiffs to obtain a permit were irrational because:

a) the governmental taking of private property for public use, without compensation, is prohibited by law;

b) Drom Court is a dedicated truck route designed for the type of traffic that would be utilizing Parcel A;

c) the Village Board's requirements call for Plaintiffs to construct a road and to divert a minimal amount of traffic from one dedicated truck route (Anita Street) to another dedicated truck route (Drom Court);

d) the Village Board's requirements call for private citizens to finance and construct a public roadway and to submit to a governmental taking of their property without compensation, in order to obtain a building permit;

e) Construction of a roadway is not a valid condition for site plan approval of Parcel A under the Village's site plan review ordinance;

f) Construction of a block-long roadway would not be financially feasible for Plaintiffs;

g) Parcel A is already zoned for Plaintiffs' intended use.

272. The Village's motives for failing to take final action were corrupt and self-serving so as to shock the conscience in that:

a) The Village's road requirements would result in a governmental taking of Plaintiffs' private property for public use without compensation;

b) The Village engaged in self-dealing by requiring Plaintiffs to build a road at Plaintiffs' expense, by requiring Plaintiffs to give the Village a public easement to use the road, and by requiring Plaintiffs to submit to the governmental taking of their property without compensation;

c) The Village engaged in self-dealing by requiring Plaintiffs to build a road at Plaintiffs' expense, and to grant the Village a public easement without compensation, so the Village could use that road to divert traffic from Triple Play Academy to Anita Street through Plaintiffs' property.

d) The Village engaged in self-dealing by imposing the financial burden of municipal road construction on private parties;

e) The Village's road requirement had nothing to do with the minimal amount of projected traffic that would be generated by Parcel A.

f) The Village engaged in self-dealing by requiring Plaintiffs to build a road to resolve the traffic problem that the Village created with Triple Play Academy, and by its plan to obtain an easement for public use of the road without compensation to Plaintiffs, so that it could divert traffic to Anita Street through Plaintiffs' property.

273. At all times relevant hereto, Section 10-2-4 of the Village Code created a right in Plaintiffs to "final action" by the Village Board on Plaintiffs' appeal and request for a variance.

274.    At all times relevant hereto, the procedural rights created by the Zoning Ordinance protected Plaintiffs' substantive property rights pertaining to the use of Parcel A.

275.    At all times relevant hereto, Plaintiffs' substantive property rights were protected by the Fourteenth Amendment to the United States Constitution.

276.    The Village Board's inaction at its August 12, 2019 meeting left Plaintiffs with no permit to develop Parcel A, and no final action by the Village Board to appeal.

277.    The Village Board's inaction deprived Plaintiffs of their substantive property interest in the commercial use of Parcel A.

278.    The Village Board's inaction violated Plaintiffs' constitutional rights to due process guaranteed by the Fourteenth Amendment.

279.    As a direct and proximate result of the conduct of the Village Board in failing to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance, the Defendant Village deprived Plaintiffs of their rights secured by the Fourteenth Amendment to the United States Constitution.

280.    As a direct and proximate result of the conduct of the Village Board in failing to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance, the Defendant Village has caused Plaintiffs to suffer damages of a continuing and pecuniary nature, including loss of use of Parcel A, continuing money damages, attorney fees, other professional fees, and other pecuniary losses.

281.    Plaintiffs' damages are the direct result of the official acts of the Village Board and Mayor.

282.    State court remedies are unavailable to Plaintiffs because the Defendant Village failed to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and

request for a variance and because Plaintiffs have suffered economic damages resulting from the Village Board's inaction for which state court remedies are inadequate and fail to provide Plaintiffs with complete relief.

283. The Village Board's failure to take final action resulted in a deprivation of Plaintiffs' property right in the development and use of Parcel A.

284. The Defendant Village's inaction deprived Plaintiffs of all permitted uses of Parcel A under the M-1 zoning classification.

285. The Defendant Village's inaction deprived Plaintiffs of their rights under the Zoning Ordinance.

286. The Village's requirements that 1) Plaintiffs construct a road at plaintiffs' expense from Drom Court across their property to Anita Street, 2) that Plaintiffs grant the Village a public easement to use the road, and 3) that Plaintiffs submit to the Village's taking of Plaintiffs' property without compensation, were arbitrary, irrational, unreasonable, and corrupt requirements which bore no substantial relationship to public health, safety, or welfare.

287. As a direct and proximate result of the Village Board's failure to take final action on Plaintiffs' appeal and request for a variance, the Defendant Village deprived Plaintiffs of their rights secured by the Fourteenth Amendment to the United States Constitution.

288. As a direct and proximate result of the Mayor's failure to enforce the zoning ordinance to require the Board to take final action, the Defendant Village deprived Plaintiffs of their rights secured by the Fourteenth Amendment to the United States Constitution.

289. As a direct and proximate result of the Village Board's failure to take final action, the Defendant Village deprived Plaintiffs of their constitutionally-protected property interests in Parcel A without due process of law.

290.    As a direct and proximate result of the Village Board's failure to take final action and the Mayor's failure to enforce the zoning ordinance, the Defendant Village caused Plaintiff to suffer damages of a pecuniary nature, including loss of use of Parcel A, loss of value to Parcel A, loss of revenue from Parcel A, continuing money damages, attorney fees, other professional fees, and other pecuniary losses.

291.    As a direct and proximate result of the official conduct of the Village Board, the Defendant Village is liable to the Plaintiffs for civil damages and other relief for the violation of Plaintiffs' civil rights.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Honorable Court grant judgment on their behalf and against the Defendant Village of Antioch, Illinois on Count II of Plaintiffs' Second Amended Complaint, and grant Plaintiffs the following relief:

- Compensatory damages and in an amount in excess of $100,000;

- Plaintiffs' reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988;

- Grant Plaintiffs the legal right to the requested permit as a consequence of the concerted activity of the defendant public officials intended to deprive Plaintiffs of their constitutional rights; or, alternatively,

- Remand Plaintiffs' appeal to the Village Board with instructions for the Village Board to take final action on Plaintiffs' appeal and request for a variance and to grant Plaintiffs the requested permit;

- Grant Plaintiffs the right to the free use of their property as permitted by law; and,

- For such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ James T. Harrison
James T. Harrison
Attorney for Plaintiffs

James T. Harrison
Attorney at Law
Harrison Law Offices, P.C.
684 S. Eastwood Drive
Woodstock, IL 60098
815-338-7773
Atty. No. 6207020
jharrison@harrisonlawoffices.com