**IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| LINDA KIDWELL, WALTER P. PARAMSKI, JR., and L&W REAL ESTATE MANAGEMENT, LLC,<br><br>                         Plaintiffs,<br><br>v.<br><br>VILLAGE OF ANTIOCH, ILLINOIS, et al.,<br><br>                         Defendants. | Case No. 1:20-cv-04744<br><br>Judge Charles R. Norgle |

## ORDER

Defendants' motion to dismiss for failure to state a claim [53] is granted and the case is dismissed without prejudice. Civil case terminated.

## MEMORANDUM OPINION

Linda Kidwell, Walter Paramski, Jr., and L&W Real Estate Management, LLC ("Plaintiffs") bring this case against the Village of Antioch, Illinois (the "Village" or "Antioch"), the Mayor of Antioch, Lawrence Hanson, in his official capacity, and various members of the Board of Trustees of Antioch, in their official capacities[1] ("Defendants"). Plaintiffs allege that Defendants violated their constitutional rights to procedural (Count I) and substantive (Count II) due process under the Fourteenth Amendment by failing to take final action regarding Plaintiffs' permit application to build an additional parking lot on their land. Plaintiffs seek compensatory damages pursuant to 42 U.S.C. § 1983 of at least $100,000, reasonable attorneys' fees and costs, and the award of the permit they requested. Defendants have filed a motion to dismiss Plaintiffs' second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that

---

[1] Suing individual members of the Board of Trustees in their official capacities amounts to a cause of action against the Village only. Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999).

Plaintiffs' allegations are insufficient to state a claim. For the following reasons, the motion is granted.

## I. STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-557 (2007). This statement must provide sufficient plausible facts to put a defendant on notice of the claims against him. Brooks v. Ross, 578 F. 3d 574, 581 (7th Cir. 2009). The complaint "must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above a speculative level.'" Doe v. Village of Arlington Heights, 782 F.3d 911, 914 (7th Cir. 2015) (quoting Twombly, 550 U.S. at 555, 570). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotation marks omitted). In reviewing a plaintiff's claim, the court "must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." Virnich v. Vorwald, 664 F.3d 206, 212 (7th Cir. 2011).

## II. BACKGROUND

The following background is taken from Plaintiffs' complaint, and Plaintiffs' factual allegations are taken as true. Plaintiffs Linda Kidwell and Walter Paramsky own, and Kidwell operates, Anita Self Storage, Inc., a self-storage business located at 676 Anita Avenue in Antioch, Illinois. Plaintiffs sought to develop a piece of land, Parcel A, which they had been using for outdoor trailer storage in connection with Anita Self Storage. Specifically, Plaintiffs wanted to develop a paved, fenced, and lighted parking area on Parcel A for additional outdoor trailer

storage. The land had an M-1 zoning classification, which permitted outdoor storage yards, including vehicle storage, subject to site plan approval by the Village code enforcement official.

Parcel A is at the termination of Drom Court, a two-lane, asphalt-surfaced, dead-end Village roadway. Drom Court is a public use roadway used by the owners and occupants of properties fronting on Drom Court, which include manufacturing, commercial, and residential properties. While Drom Court has no curbs, gutters, or sidewalks, it is a designated truck route under the Village Code, meaning that the road can accommodate heavy or large trucks safely.

Plaintiffs needed approval from the Village Board, which possesses final policy-making authority for Antioch, to develop Parcel A. The Village Board possesses authority to adopt ordinances, legislation, policies, and rules for the conduct of the Village of Antioch government. The Village adopted and uses the Village Code, which includes the Village's Site Plan Review Ordinance and Zoning Ordinance. In 2017, Plaintiffs retained an engineering firm to render site plans for the development of Parcel A whereby they could improve and expand their trailer storage capacity. Plaintiffs began clearing the land consistent with the site plan created by the engineer, but the Village told them to refrain from further work until the site plan was approved.

Kidwell discussed the site plan with Michael Garrigan, the Code Enforcement Official for the Village, who told her that improving Parcel A with a paved parking area would be no problem. Garrigan also informed Kidwell of screening requirements, which require that the parking lot be screened from nearby public streets, and Kidwell raised safety concerns for her customers regarding the screening requirements.

Accordingly, Kidwell attended a meeting of the Zoning Board[2] on December 13, 2018. At the meeting, four of Plaintiffs' neighbors who live on Drom Court complained about traffic on

---

[2] The Zoning Board and Village Board are not one-in-the-same. The Village Board has ultimate authority to adopt or reject recommendations of the Zoning Board.

Drom Court attributable to Triple Play Academy ("Triple Play"), a business and adjacent neighbor of Plaintiffs and Anita Self Storage. After the December 13, 2018 meeting, Kidwell continued to have conversations with Garrigan about the site plan. She told him that the Village was responsible for any traffic issues because it had not followed its own ordinance regarding the required number of parking spaces when it issued a permit to Triple Play in November 2018.

On January 10, 2019, Plaintiffs again appeared before the Zoning Board. They agreed to install lighting as required by Village Code, but raised safety concerns about the screening requirements. Plaintiffs offered to screen the entire proposed parking area to get the site plan passed, but the Zoning Board suggested Plaintiffs apply for a variance to the screening requirements, which needed to be approved by the Village Board. The Zoning Board then continued the matter to a February 21, 2019 meeting.

In January 2019, Garrigan continued to inform Kidwell that the traffic complaints were not helping Plaintiffs' site plan get approved. Kidwell again informed Garrigan that traffic issues were attributable to Triple Play, and that she had never received complaints from Drom Court neighbors or neighbors on Anita Street in 15 years. Kidwell sent letters to all her neighbors, pursuant to Village Code, informing them of Plaintiffs' request for a variance.

On February 21, 2019, the Zoning Board met again. Four people from three different households on Drom Court addressed the Zoning Board. They complained about parking along Drom Court due to traffic from Triple Play, and opined negatively about future recreational vehicle traffic if Plaintiffs' permit was approved, but none objected to Plaintiffs' request for a variance. After one neighbor noted that Plaintiffs already had an entrance to their business on Anita Street and that Plaintiffs' customers should use the Anita Street entrance to access Parcel A, rather than Drom Court, the Zoning Board seized on the idea. The Zoning Board decided that Plaintiffs should install a road through their property from Drom Court to Anita Street so that vehicles could access

4

their proposed parking lot from Anita Street, rather than Drom Court. Kidwell objected that this plan was not practical. The Zoning Board then denied the permit application and request for a variance.

Kidwell informed Garrigan that Plaintiffs wished to appeal the decision of the Zoning Board to the Village Board and requested that Garrigan put the matter on the March 11, 2019 agenda for the Village Board meeting. At the March 11, 2019 Village Board meeting, the Village Board did not allow Kidwell to discuss Plaintiffs' site plan, but instead focused on Plaintiffs installing a road from Anita Street to Drom Court for access purposes. The Village Board then denied Plaintiffs' appeal and request for a variance, telling Kidwell to come back when Plaintiffs had drawings of an access road from Anita Street to Drom Court. Kidwell asked why Plaintiffs' petition was denied, and a Village Attorney told her: "Fire safety; there's only access back to the area, a possible second access road, the utilization of Drom Court, and unhappy neighbors, as well as the screening ordinance." Dkt 52 (Second Amended Complaint ("SAC")) ¶ 71. Plaintiffs had various informal discussions subsequent to the March 11, 2019 Village Board meeting. A mutual acquaintance of Plaintiff Kidwell and Defendant Hanson, Rich Cashmore, asked Hanson—the Mayor—what Plaintiffs needed to do to get site plan approval, and Hanson relayed that Plaintiffs "need[] to put in a road." SAC ¶ 72.

In April 2019, Plaintiffs retained counsel to petition the Village Board to reconsider Plaintiffs' appeal of their variance and permit denial. Plaintiffs revised the site plan, which included lighting, landscaping, fencing, and screening plans together with revised engineered drawings. Plaintiffs and their counsel met with Garrigan to discuss the revised site plan. Garrigan told Kidwell that Plaintiffs' revised plan satisfied the requirements of the Village Code. In May 2019, on orders from the Mayor, Garrigan and the Fire Chief investigated whether emergency vehicles could access Parcel A from Drom Court, and concluded that there was no problem in this

regard. Garrigan agreed to forward Plaintiffs' site plan to the Village Board for the non-voting meeting of the committee on May 22, 2019.

However, after the Fire Chief left, and Garrigan and Kidwell were alone, Garrigan insisted that Plaintiffs would have to construct a road from Drom Court to Anita Street or there would be no development of Parcel A. Garrigan said that the Village Board would fight Plaintiffs' use of Drom Court, would cost Plaintiffs $100,000, and would cost the Village nothing. Kidwell stated she would not construct an additional road when Parcel A already abuts Drom Court, a public road and designated truck route, but Garrigan responded that it would be easier if she would just agree to the Village's demands. At this time, Garrigan also stated that the Village would want an easement for public use of the road, and Kidwell said that would never happen.

The Village then requested a meeting with Plaintiffs and their counsel. The meeting was entirely about the Village wanting Plaintiffs to construct a road through Plaintiffs' other parcels in order to access Parcel A from Anita Street. The Village attorney, Bob Long, Garrigan, and a Village Administrator, Jim Keim, told Plaintiffs that they were helping Plaintiffs get the permit passed, and that the only way it would pass would be if Plaintiffs put in a road from Anita Street to Drom Court.

On May 22, 2019, the Village Board met at a non-voting meeting of the committee of the whole and considered Plaintiffs' appeal and variance. At the meeting, Plaintiffs' counsel tendered a traffic study to the Village Board showing that the planned use of the property would have a minimal impact on traffic on Drom Court. Garrigan also presented the revised site plan and noted that it satisfied the Village Code's requirements, though it didn't include plans to build a new road. After Garrigan's presentation, the discussion with the Village Board continued to dwell on the potential installation of a new road through Plaintiffs' other parcels before the Village Board would approve the site plan. The motion for reconsideration of the appeal and variance request

6

was placed on the agenda of the Village Board's August 12, 2019 meeting, for final action by the Village Board.

At the August 12, 2019 meeting, there were no objections to the screening variance requested by Plaintiffs, and Plaintiffs' site plan had satisfied the requirements for obtaining a permit. According to Plaintiffs, they had satisfied all legitimate requirements to receive approval. Plaintiffs' counsel addressed each of the previously considered issues, including traffic concerns and emergency vehicle access. However, after the Village Board reviewed the request, it was unable to reach agreement on whether to recommend approval or denial of the motion for reconsideration at that time. Village Board member Yost commented that the Village was attempting to solve a traffic problem with its proposed solution. Village Board member Dominiak called the question for final action, but no member of the Village Board made a motion to approve or deny Plaintiffs' site plan. Ultimately, the Village Board did not take final action on the motion for reconsideration of Plaintiffs' appeal and request for a variance at the August 12, 2019 meeting. This failure to take final action violated the express language of Section 10-2-4 of the Village Code, and at no time did Defendant Village initiate eminent domain proceedings to legally acquire Plaintiffs' property for a public roadway from Drom Court to Anita Street.

### III. DISCUSSION

In their complaint, Plaintiffs make out two counts against Defendants. Count I is a procedural due process claim under the Fourteenth Amendment, seeking damages pursuant to 42 U.S.C. § 1983 (providing a civil cause of action against anyone who deprives a citizen of rights secured by the Constitution). Count II is a substantive due process claim under the Fourteenth Amendment, also seeking damages pursuant to 42 U.S.C § 1983. In the twelve, often redundant[3]

---

[3] See, e.g., SAC ¶ 111 ("At all times relevant hereto, Section 10-2-4 of the Village Code created a mandatory duty for the Village Board to take final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a

pages explaining their basis for their claims, Plaintiffs assert, in part, that (1) the Village Code created a mandatory duty for the Village Board to take final action, (2) the Village Board's failure to act was an effective denial but was not a final action within the Village Board's ordinance nor a final administrative decision that would allow Plaintiffs to seek state court remedies, (3) Plaintiffs had a legitimate claim of entitlement to a building permit and site plan approval, as they met the substantive criteria of the site plan review ordinance, (4) the withholding of final action and the plan to force construction of a road was inverse condemnation, which was arbitrary, irrational, and egregious, and (5) the Village's motives were corrupt, self-serving, and shock the conscience.

While never explicitly saying so in their complaint, Plaintiffs in their Response to the motion to dismiss "clarif[y]" that they make a claim that the Village imposed an "unconstitutional condition[]" on Plaintiffs' permit such that the case "culminated in procedural and substantive due process violations." Dkt. 56 at 1-2 ("On a procedural level, Defendants also conditioned final action . . . on plaintiffs' submission to the defendants' unconstitutional conditions . . . On a substantive level, defendants' unconstitutional conditions created an undue burden on plaintiffs' right to just compensation under the 5th amendment[.]"). On this point, Plaintiffs rely extensively on Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595 (2013), which held that government may not deny a government benefit—for example, a permit application—because the applicant refused to yield to an unconstitutional condition imposed by the government.

Plaintiffs conflate due process and takings law. "In short, Koontz does not apply to substantive due process, as it does to the Takings Clause or to other enumerated constitutional rights." Hillcrest Prop., LLP v. Pasco Cty., 915 F.3d 1292, 1299 (11th Cir. 2019); Pietsch v. Ward

---

variance."); SAC ¶ 117 ("Section 10-2-4 of the zoning ordinance prohibited the Village Board from withholding final action on Plaintiffs' motion for reconsideration of Plaintiffs' appeal and request for a variance.").

Cty., 991 F.3d 907, 909 (8th Cir. 2021) ("Plaintiffs' due process and unconstitutional conditions claims are an impermissible attempt to recast a Takings claim."); see also Reno v. Flores, 507 U.S. 292, 308 (1993) (rejecting substantive regulatory challenge rephrased as procedural due process). "Koontz authorizes a Takings claim, not a due process claim[.]" Pietsch v. Ward Cty., 991 F.3d 907, 909 (8th Cir. 2021).

For this reason, Defendants argue that Plaintiffs fail to even plead an unconstitutional conditions claim. Plaintiffs, after all, only offer two explicit counts, one for procedural due process and another for substantive due process, and never use the terms "unconstitutional condition" or "exaction" in their complaint. But Plaintiffs in their complaint do cite to the Fifth Amendment, and articulate the unconstitutional condition that they emphasize in their Response. SAC ¶ 126 ("The Village Board withheld taking final action on Plaintiffs' site plan, in order to: a) force plaintiffs to construct a public roadway . . . through Plaintiffs' property . . . at plaintiffs' expense, b) force Plaintiffs to grant the Village a public easement to use the road, and c) force Plaintiffs to submit to the Village's taking of their property without compensation."); id. ¶ 254-55 (Plaintiffs property interests were "protected by the Fifth and Fourteenth Amendment" and "governmental taking of private property for public use without compensation was prohibited by the Fifth and Fourteenth Amendments"); id. ¶ 271(e) ("Construction of a roadway is not a valid condition for site plan approval . . . under the Village's site plan review ordinance[.]"); id. ¶ 272(a) ("The Village's road requirements would result in a governmental taking . . . without compensation[.]"). Therefore, dismissing the claim on this basis alone would "elevate form over function." Dyson v. City of Calumet City, 306 F. Supp. 3d 1028, 1035–36 (N.D. Ill. 2018) (analyzing claims against the city despite that the claims were not labeled as Monell claims). The Court will therefore address Plaintiffs' procedural due process claim, substantive due process claim, and unconstitutional conditions claim in turn.

A. Procedural Due Process

Defendants argue that Plaintiffs have no constitutionally protected property interest in the approval of the site plan or variance petition, though Defendants admit that Plaintiffs have a protected property interest in the land itself. The Court agrees. "[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." FKFJ, Inc. v. Vill. of Worth, 466 F. Supp. 3d 853, 869 (N.D. Ill. 2020) (quoting Cole v. Milwaukee Area Tech. Coll. Dist., 634 F.3d 901, 904 (7th Cir. 2011)). Property interests are not created by the Constitution, but by rules and understandings stemming from independent sources like state law. Id. "For an interest to be constitutionally protected under the due process clause, the plaintiff must show she has 'a legitimate claim of entitlement to it' rather than 'a unilateral expectation to it.'" FKFJ, 466 F. Supp. At 869 (quoting Dyson v. City of Calumet City, 306 F. Supp. 3d 1028, 1040 (N.D. Ill. 2018)). Such a protected property interest exists "only when the state's discretion is clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met." Id. (quoting Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 900 (7th Cir. 2012)).

Here, under the Village Code, the Village Board has final decision-making authority over variance petitions and site plan applications. The Village Code states that the Village Board "may grant, deny, or grant with modification the proposed variance" and the Village Board "shall approve, approve with modification, or deny site plans." Dkt. 53 at 7.[4] Under the code, the Village retains discretion to decline variances and site plans. "Given those undisputed facts, the Court agrees with defendants that plaintiffs had no legitimate claim of entitlement, as opposed to a unilateral expectation . . . Thus, there is no genuine factual dispute on plaintiffs' due process claim

---

[4] Plaintiffs do not dispute that this is the correct language of the Antioch Village Code, §§ 10-4-5 (Variances) and 10-13-5 ([Site Plan] Authorization). See Dkt. 56 (Response).

because plaintiffs have not demonstrated that they had a protected property interest[.]" FKFJ, 466 F. Supp. 3d at 871.

Even if such an interest existed, Plaintiffs received the minimal process they were due. The "procedures 'due' in zoning cases are minimal." River Park, Inc. v. City of Highland Park, 23 F.3d 164, 166 (7th Cir. 1994). "Cities may elect to make zoning decisions through the political process . . . with no hearings of any kind." Id. "Indeed, the Seventh Circuit has stated that when zoning decisions are confided to a legislative rather than a judicial body, as is the case here, the affected persons have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process." Dyson v. City of Calumet City, 306 F. Supp. 3d 1028, 1043 (N.D. Ill. 2018) (cleaned up) (quoting Indiana Land Co., LLC v. City of Greenwood, 378 F.3d 705, 710 (7th Cir. 2004)). Here, Plaintiffs appeared in-person at numerous hearings and were represented by counsel, who presented at a hearing. Plaintiffs do not allege that the hearings "provided no opportunity to be heard." Dyson, 306 F. Supp. 3d at 1043. Plaintiffs' site plan was considered first by the Zoning Board and then by the Village Board, and Plaintiffs were allowed to submit a revised site plan and variance petition. Such an opportunity to be heard does not violate procedural due process. Mercatus Grp. LLC v. Lake Forest Hosp., 528 F. Supp. 2d 797, 814 (N.D. Ill. 2007) (plaintiff attended meetings with an opportunity to be heard, so no procedural due process violation).

As Defendants argue, Plaintiffs also failed to properly avail themselves of state law remedies. "If a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged." Doherty v. City of Chicago, 75 F.3d 318, 323 (7th Cir. 1996) (quoting Daniels v. Williams, 474 U.S. 327 (1986)). In their complaint, Plaintiffs argue that they could not resort to state court remedies because there was no final administrative action. They also argue that they were at least due a final decision, and that

11

without a final decision, "notice and opportunity to be heard" are meaningless. Dkt. 56 at 9. But the decision here was legislative, not administrative, and the argument that their site plan application was "in a state of limbo" or "sat on" by the Village Board without final decision is unavailing. Dyson, 306 F. Supp. 3d at 1043-44. In River Park, Inc. v. City of Highland Park, 23 F.3d 164 (7th Cir. 1994), "city officials sat on the developer's second application," but the Seventh Circuit found that the delay was not a due process violation. Dyson, 306 F. Supp. 3d at 1043-44 (discussing how the Seventh Circuit held in River Park that "the Due Process Clause permits municipalities to use political methods—which may mirror procedural maneuvers that prevent a question from reaching the floor for a vote—to decide [a] zoning issue." (cleaned up)). "[A]ny grievance [Plaintiff] has about her application being held in limbo is a matter of local law in which Illinois provides adequate protection." Dyson, 306 F. Supp. 3d at 1044 ("the suit should have been brought in state not federal court, especially considering the developer could have asserted a common law writ of certiorari to contest the runaround it had receiving [sic] from the city."). Plaintiffs have neither shown that they availed themselves of state law nor demonstrated that the available remedies—like a mandamus action, common law writ of certiorari, or declaratory judgment—were inadequate. In their complaint, they only state that "state court remedies are inadequate and fail to provide Plaintiffs with complete relief." SAC ¶ 136. Plaintiffs argue that a mandamus action would be futile because it would not change the Village Board's behavior or decision, but that speculative assertion does not alter the requirement that they avail themselves of state law remedies. The claim is dismissed.

In addition, to the extent that Plaintiffs support their Constitutional claims by arguing that Defendants violated local or state law, the argument is misplaced. See Dkt. 56 at 9 ("plaintiffs were entitled to final action by ordinance"). "[T]he Constitution does not require state and local governments to adhere to their procedural promises." River Park, Inc. v. City of Highland Park,

23 F.3d 164, 166-67 (7th Cir. 1994). "Failure to implement state law violates that state law, not the Constitution; the remedy lies in state court . . . the idea in zoning cases is that the due process clause permits municipalities to use political methods to decide, so that the only procedural rules at stake are those local law provides, and these rules must be vindicated in local courts." Id.; see Mercatus Grp. LLC v. Lake Forest Hosp., 528 F. Supp. 2d 797, 815 (N.D. Ill. 2007) (dismissing plaintiff's allegations in part because they "all boil down to complaints that it did not receive the procedural rights accorded to it either by Lake Bluff's zoning ordinance or Illinois law. Because these are violations of state law, Mercatus has no federal procedural due process claim."); Coniston Corp. v. Vill. of Hoffman Ests., 844 F.2d 461, 467 (7th Cir. 1988) ("Something more is necessary than dissatisfaction with the rejection of a site plan to turn a zoning case into a federal case; and it should go without saying that the something more cannot be merely a violation of state (or local) law. A violation of state law is not a denial of due process of law.").

### B. Substantive Due Process

Plaintiffs allege that Defendants infringed their right to property such that their right to substantive due process was violated. The scope of the substantive due process doctrine is "limited." Lee v. City of Chicago, 330 F.3d 456, 467 (7th Cir. 2003). Unless the alleged violation involves a fundamental right, substantive due process only requires that the government practice be "neither arbitrary nor irrational." Id.; Vision Church v. Vill. of Long Grove, 468 F.3d 975, 1001 (7th Cir. 2006). However, when the violation involves only a property interest, the Court will engage in the arbitrary or irrational analysis only if the Plaintiff first shows "either the inadequacy of state law remedies or an independent constitutional violation[.]" Id.

As stated above, Plaintiffs have failed to show the inadequacy of state law remedies. Because Plaintiffs only state conclusory allegations without pleading facts suggesting their plausibility, Plaintiffs must show an independent constitutional violation to sustain their

13

substantive due process claim. Mercatus Grp. LLC v. Lake Forest Hosp., 528 F. Supp. 2d 797, 816 (N.D. Ill. 2007).

In their complaint, Plaintiffs appear to allege an independent constitutional violation of the Takings Clause of the Fifth Amendment. But based on the allegations in Plaintiffs' complaint, it is clear that no taking has occurred in the constitutional sense because the effective denial of the permit has not placed "such onerous restrictions on [their] land as to render it useless." Dyson v. City of Calumet City, 306 F. Supp. 3d 1028, 1045 (N.D. Ill. 2018). Plaintiffs can still use their land to run their business, as they have done for years, even if the Village Board were to officially deny their request. Id. ("The complaint does not come close to pleading a total taking. It states only that the defendants have denied (or at least effectively denied) two of Dyson's proposed uses for the property[.]"). In their Response, Plaintiffs emphasize that they assert a different independent constitutional violation—an unconstitutional conditions violation. But, for the reasons stated below in Section III.C. of this opinion, the Court finds that Plaintiffs' allegations are not sufficient to maintain an unconstitutional conditions claim.

Even if there was an independent constitutional violation in this case, the government's action here did not violate Plaintiffs' substantive due process rights because it did not rise to a level that would "shock the conscience." GEFT Outdoors, LLC v. City of Westfield, 922 F.3d 357, 368 (7th Cir. 2019). Plaintiffs allege that their neighbors complained about potential traffic issues in an open meeting of the Village Board, and that a Village attorney told Plaintiffs that the traffic concerns were part of the reason the Village Board denied Plaintiffs' original, unrevised site plan. See SAC ¶ 71 (village lawyer explained the denial by saying "Fire safety; there's only access back to the area, a possible second access road, the utilization of Drom Court, and unhappy neighbors, as well as the screening ordinance."). "[N]othing is more common in zoning disputes than selfish opposition to zoning changes" and the "Constitution does not forbid government to

14

yield to such opposition[.]" <u>Coniston Corp. v. Vill. of Hoffman Ests.</u>, 844 F.2d 461, 467 (7th Cir. 1988). "As far as the Constitution is concerned, popular opposition to a proposed land development plan is a rational and legitimate reason for a legislature to delay making a decision." <u>CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore</u>, 769 F.3d 485, 488 (7th Cir. 2014). The Village's effective denial of (or failure to vote on) Plaintiffs' proposed site plan was therefore neither arbitrary nor irrational. It did not constitute "the most egregious official conduct" required to "shock the conscience." <u>GEFT Outdoors</u>, 922 F.3d at 368. "At worst, the decision here was mistaken and protectionist; it was not irrational, so the claim of a denial of substantive due process fails." <u>Coniston Corp. v. Vill. of Hoffman Ests.</u>, 844 F.2d 461, 468 (7th Cir. 1988) (deprivation of the 'right' to develop office space on a 17-acre parcel of a much larger tract is a limited, and perhaps minimal, incursion into property rights).

C. <u>Koontz</u> and Unconstitutional Conditions Claim

In their Response, despite not having pleaded a separate Fifth Amendment unconstitutional conditions count, Plaintiffs argue that this is an unconstitutional conditions case and not a zoning case. The Supreme Court's unconstitutional conditions doctrine is "an overarching principle . . . that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." <u>Koontz v. St. Johns River Water Mgmt. Dist.</u>, 570 U.S. 595, 604 (2013). "Under this doctrine, the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property . . . If the government could not have ordered the action without violating the Constitution, then imposing the condition constitutes an unconstitutional taking unless the government can show an 'essential nexus' between the condition and the end the government seeks to achieve, and a 'rough proportionality' between the condition and the impact of the proposed development." <u>Home Builders Ass'n of Greater Chicago v. City</u>

15

of Chicago, 213 F. Supp. 3d 1019, 1023–24 (N.D. Ill. 2016) (cleaned up); Koontz, 570 U.S. at 599

(citing Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987) and Dolan v. City of Tigard,

512 U.S. 374 (1994)). "Nollan and Dolan involve a special application of this doctrine that protects

the Fifth Amendment right to just compensation for property the government takes when owners

apply for land-use permits." Koontz, 570 U.S. at 604. The doctrine prevents "out-and-out . . .

extortion[.]" Id. at 606.

      In Koontz, the petitioner applied for a permit to develop his land and the government "in

effect told petitioner that it would not allow him to build on 2.7 of those acres unless he agreed to

spend money improving public lands." Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S.

595, 611 (2013). Petitioner sued under a Florida statute allowing recovery of money damages for

a government taking without just compensation. As relevant here, the Supreme Court held that a

unit of government may not circumvent Nollan and Dolan by denying an application because the

applicant refused to yield to an unconstitutional condition demanded by the government. Koontz,

570 U.S. at 599. That is because "the government may not deny a benefit to a person because he

exercises a constitutional right." Id. at 604. "The principles that undergird our decisions

in Nollan and Dolan do not change depending on whether the government *approves* a permit on

the condition that the applicant turn over property or *denies* a permit because the applicant refuses

to do so." Id. at 606 (emphasis in original) ("Our unconstitutional conditions cases have long

refused to attach significance to the distinction between conditions precedent and conditions

subsequent."). Ultimately, "[e]xtortionate demands for property in the land-use permitting context

run afoul of the Takings Clause not because they take property but because they impermissibly

burden the right not to have property taken without just compensation. As in other unconstitutional

conditions cases in which someone refuses to cede a constitutional right in the face of coercive

pressure, the impermissible denial of a governmental benefit is a constitutionally cognizable

injury." Id. at 607 (noting that it makes no difference whether the government might have been able to deny petitioner's application outright without putting a condition on the permit).[5]

Here, it is clear that were the Village to actually take Plaintiffs' land to construct a public road, the government action would constitute a Fifth Amendment taking requiring just compensation. Plaintiffs argue that Defendants imposed such a condition on their permit, which is a constitutional violation, and seek a monetary remedy through 42 U.S.C. § 1983. Defendants argue that under the facts specifically alleged by Plaintiffs, their unconstitutional conditions claim fails because (1) Plaintiffs do not allege that the government made a final decision and (2) Plaintiffs do not allege that a concrete demand was made by the Village Board. The Court agrees with Defendants on both points.

First, Defendants argue that while the government cannot deny a permit just because the applicant will not abide by an unconstitutional condition, see Koontz, Plaintiffs cannot maintain such a claim until the government has in fact made a final decision to deny the permit. 570 U.S. 595 (2013). Koontz is silent on this point because there the government had "denied [the] application," and the Court explicitly held that Nollan and Dolan must be satisfied "when the government denies the permit[.]" 570 U.S. at 603, 619. The Village Board here never voted on the reconsideration of Plaintiffs' appeal and revised site plan.

To support their argument, then, Defendants cite cases for the proposition that takings claims predicated on the Fifth Amendment are only actionable after a final decision is made. For example, in Forseth v. Vill. of Sussex, the plaintiffs' substantive due process claim arose "from Defendants' act of conditioning approval of the final plat on the [plaintiffs'] agreement to convey

---

[5] While irrelevant to the case at issue because Plaintiffs assert that Antioch demanded an easement to a new road, Koontz also held (1) that "monetary exactions" must also satisfy the nexus and rough proportionality requirements of Nollan and Dolan, and (2) that because there had been no actual "taking" in Koontz's case, the remedy in such a case is a question of the cause of action on which the landowner relies—whether state or federal. Id. at 608-09.

a buffer strip to Village Board President John Tews personally." 199 F.3d 363, 368 (7th Cir. 2000). The Seventh Circuit held that "because the . . . 'labeled' substantive due process claim falls within the framework for takings claims . . . we hold that their substantive due process claim is subject to [the] requirement that they seek a final decision and pursue state court remedies before federal courts have jurisdiction to hear their case." Id. at 370; see Williamson Cty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985) ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue"); Covington Ct., Ltd. v. Vill. of Oak Brook, 77 F.3d 177, 179 (7th Cir. 1996).

The Court agrees with Defendants that the principle should apply here. Plaintiffs have alleged that the Village Board's failure to act was an effective denial, but their unconstitutional conditions claim is not ripe until the Village Board has in fact denied the reconsideration of their appeal and revised site plan. This requirement does not leave Plaintiffs without recourse. As Defendants state, Plaintiffs could have sought a writ of mandamus or a writ of certiorari in state court to compel the Village Board to vote, or filed a declaratory or injunctive action to compel the Village Board to approve the petition. Thus, they may have gotten the necessary final decision needed to bring their claim in federal court, or even the award of the permit they seek.[6] Instead, they filed a federal lawsuit before the Village Board made a final decision, so their claim should be dismissed.

---

[6] The Koontz Court acknowledged the government's argument that Koontz "should have first sought judicial review of the denial of his permit in the Florida appellate court," an argument that two members of the Florida Supreme Court credited. 570 U.S. at 609-10. But the Koontz Court declined to "second-guess a State Supreme Court's treatment of its own procedural law." Id. at 10. This case does not arise under state law and so the same does not hold here.

The Court also agrees that Plaintiffs' unconstitutional conditions claim should be dismissed because Plaintiffs fail to allege a concrete demand from the Village Board. The Koontz Court explicitly declined to reach this issue. "[W]e decline to reach [the government's] argument that its demands for property were too indefinite to give rise to liability under Nollan and Dolan. The Florida Supreme Court did not reach the question whether respondent issued a demand of sufficient concreteness to trigger the special protections of Nollan and Dolan" so the "Court therefore has no occasion to consider how concrete and specific a demand must be to give rise to liability under Nollan and Dolan." Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 610 (2013). The dissent in Koontz, however, noting that both parties briefed and argued the issue on the merits (570 U.S. at 630 n.4), urged (and understood the majority to agree) that Nollan and Dollan "apply only when the government makes a 'demand.'" Koontz, 570 U.S. at 631. The dissent argued that a court must find "that the permit denial occurred because the government made a demand of the landowner, which he rebuffed." Id. ("that demand must be unequivocal").

The Court agrees with that logic, and finds that because the Village's alleged demand was not sufficiently concrete, Plaintiffs' claim fails as pleaded. "If a local government risked a lawsuit every time it made a suggestion to an applicant about how to meet permitting criteria, it would cease to do so[.]" Id. Other courts have applied that reasoning. In Edwards, CDS, LLC v. City of Delray Beach, the plaintiffs raised an unconstitutional conditions claim under the Fifth Amendment and a substantive due process claim under the Fourteenth Amendment, alleging that the government conditioned approval of their land-development project on the reconveyance of two alleyways to the City and the creation of a two-way roadway on part of the land. 699 F. App'x 885 (11th Cir. 2017). The Eleventh Circuit affirmed the dismissal of the complaint because "[e]ven taking the complaint's allegations in the light most favorable to the Developers," they did "not

establish that the City ha[d] actually decided to impose such a condition." Id. at 888 (the complaint "at most establishes that the City has considered requiring the creation of a two-way road.").

Here, Plaintiffs' allegations are not sufficient to establish that the government made a concrete demand that Plaintiffs build a road or suffer the denial of the permit. First, as Plaintiffs plead, the permit has not in fact been denied, despite Plaintiffs' allegations that it has been effectively denied. As such, should the Plaintiffs seek remedies in state court to force a Village Board decision, the Village Board may still award Plaintiffs their permit based on their revised site plan—even though Plaintiffs may doubt that outcome. It cannot be concluded, then, that the permit has been denied *because* the Plaintiffs failed to meet a specific demand by the Board. Also, Kidwell was told by a Village attorney that the original site plan was denied for numerous reasons, including "Fire safety; there's only access back to the area, a possible second access road, the utilization of Drom Court, and unhappy neighbors, as well as the screening ordinance." SAC ¶ 71; see CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore, 769 F.3d 485, 488 (7th Cir. 2014) (popular opposition is a legitimate reason to delay making a land-use decision). True, Plaintiffs' complaint alleges that Plaintiffs' building of a road through their land was advocated by the Village Board as a potential solution to the Village Board's traffic concerns, but Plaintiffs do not allege that any Village Board members concretely demanded that Plaintiffs build an access road or sacrifice the award of their permit. SAC ¶ 63 (Board "decided that Plaintiffs should install" a road"); id. ¶ 69 (Board's discussion "focused on Plaintiffs installing a road"); id. ¶ 70 (Board said to "come back" with drawings of an access road); id. ¶ 72 (the Mayor told a third-party acquaintance that Plaintiffs needed to "put in a road"); id. ¶ 78 (Garrigan, a non-party, "insisted that Plaintiffs would have to construct a road . . . or there would be no development"); id. ¶ 84 (a meeting with non-party Village Administrator was entirely about the construction of a road and the Administrator said the "only way it would pass would be" to put in a road); id. ¶ 89 (after

Plaintiffs' presentation, the meeting "continued to dwell on the notion" of installing a road . . . "before the Village Board would approve" the site plan"); id. ¶¶ 96-101 (proposed ordinance prepared by Village staff included Plaintiffs' construction of the road, as the Village "was attempting to solve a traffic problem with its proposed solution"). But even taking those allegations as true, Plaintiffs have not alleged a sufficiently concrete demand from the Village to make out a plausible unconstitutional conditions claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' allegations are insufficient to state a claim. Plaintiffs' allegations show they received the minimal process they were due, and that they failed to properly avail themselves of state law remedies. Plaintiffs also fail to show either the inadequacy of state law remedies or an independent constitutional violation, so their substantive due process claim fails. The Village's alleged actions also were not arbitrary or irrational, nor do they shock the conscience. Finally, Plaintiffs' unconstitutional conditions claim fails because they did not yet receive a final decision, and do not sufficiently allege that the Village made a concrete demand.

IT IS SO ORDERED:                                    ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 13, 2021

21